## FIJALKOWSKI *v.* FIJALKOWSKI.

DIVORCE — SEPARATE MAINTENANCE — PERMANENT ALIMONY—CON-
TEMPT — RESUMPTION OF MARITAL RELATIONS — SATISFYING DE-
CREE.

Where a decree of divorce from bed and board with right
of separate maintenance was granted to defendant wife
on her cross-bill, and permanent alimony awarded to her,
on plaintiff's being cited before the court for contempt for
nonpayment of permanent alimony, he could not justify
by a showing that defendant for a short time resumed
marital relations with him, since the decree for permanent
alimony could not be so satisfied, especially in the absence
of a showing that defendant's dower rights had been re-
stored to her under 3 Comp. Laws 1915, § 11431.

Appeal from Wayne; Collingwood (Charles B.), J.,
presiding.    Submitted April 25, 1923.    (Docket No. -
25.)    Decided June 4, 1923.

Bill by Mathew Fijalkowski against Anna Fijalkow-
ski for a divorce.    There was a decree for defendant on
her cross-bill.    From an order respecting alimony,
plaintiff appeals.    Affirmed.

*Walter M. Nelson,* for plaintiff.

*John F. Jordan* (*A. F. Freeman,* of counsel), for
defendant.

MOORE, J.    January 10, 1921, the plaintiff filed a
bill of complaint praying for a divorce.    February
18, 1921, the defendant filed an answer in the nature
of a cross-bill.    After a full hearing a decree was
granted to the defendant, some of the provisions of
which read:

"It appearing to the court that the material allegations contained in defendant's cross-bill are true, and that the said plaintiff is guilty of the extreme cruelty and misconduct therein charged, and that the allegations contained in plaintiff's bill of complaint are not supported by the proofs, and that the equities of the case are with the defendant: This court finds from the proofs that the plaintiff is possessed of a substantial amount of real and personal property; that the value of said real and personal property is uncertain, but that there is beyond question, over sixty-eight hundred dollars' worth of such property; and that plaintiff has, over and above said sixty-eight hundred dollars' worth of property, other property of substantial value. * * *

"It is ordered, adjudged and decreed by the court now here, that the said parties plaintiff and defendant be, and they are hereby divorced from bed and board forever, but not otherwise from the bonds of matrimony, and that the marriage between the said parties be and remain otherwise in full force, and that the said defendant Anna Fijalkowski is entitled to a separate maintenance from the said plaintiff;

"And it is further ordered, that the said plaintiff pay to the defendant herein the said sum of eight hundred twenty-four dollars due as back alimony within a period of thirty days from the date hereof;

"And it is further ordered, that the defendant herein be allowed and that the said plaintiff do pay to her, the said defendant, the further sum of fifteen hundred dollars, as permanent alimony, and in full satisfaction of all claims for dower that the defendant may have in any property which the plaintiff owns or may hereafter own, or in which he may have any interest, one-half of said sum to be paid within six months and the balance thereof to be paid within one year from the date of this decree; * * *

"And it is further ordered, adjudged and decreed, that this decree be and remain a lien on the real estate of the plaintiff until he shall have given security for the faithful performance thereof to the satisfaction of this court." * * *

The payments were not made as provided in the

decree and plaintiff was cited before the court to show cause for nonpayment of permanent alimony. Several reasons were assigned by the plaintiff for not paying the alimony, among them being the following:

"*A*. That soon after the signing and entering of the final decree in the petition referred to, and in this cause, the same Anna Fijalkowski came voluntarily to the home of the said Mathew Fijalkowski and requested leave and offered to resume the marital relations with the said Mathew Fijalkowski; that the matter could not be arranged the first day she called and offered so to do, but that early the next morning she again returned to the home of the said Mathew Fijalkowski with the same request and agreement;

"*B*. That the said Anna Fijalkowski further agreed to surrender to the said Mathew Fijalkowski each and every right and claim which she had or could have under and by virtue of the final decree in this cause;

"*C*. That for and in consideration of the agreement and covenant of the said Anna Fijalkowski to terminate this cause and to surrender each and every right, power and claim she could or would have under said final decree, the said Mathew Fijalkowski did thereupon and at her request enter into a reconciliation with her, receive and take her back to his home as his wife."

The testimony of the plaintiff and his witnesses was taken and the defendant was examined in part. She explained the circumstances under which she entered the house of the plaintiff as follows:

"After the decree was entered, January 28th last, I didn't see Mr. Fijalkowski but heard from my son two days later. The first time I saw him must have been in March about the 28th or 30th. I was at my son's home at 250 New Hampshire, Royal Oak.

"*Q*. What did he say at that time?

"*A*. He come there at that time and said I should come home; that he was afraid he was going to be arrested again and if I don't come home he is going to kill himself on my porch; take knife and the court gave me everything and now I can have his heart

and soul and he was going to cut him toward his left side in front of my son's porch and I would find the corpse there if I would not come home.    He said he was going to give me the money; going to pay me all the money if he was to go to the poor house himself.    *    *    *

"He said I was making trouble for him; that I took every cent he had and never showed up and I told him it wasn't lawful for me to be there.    He said never mind what law says, we are going to get along.    I went to his house because if I don't come back he is going to come on that porch and I will find him dead, corpse, and he showed the way he was going to cut his side.    My daughter-in-law was there at the time.    *    *    *

"Q. Any other reason why you went back to live with him?

"A. In order to get my money in a peaceful way.

"Q. What did he say about that?

"A. He said I could have the money as soon as he raised the mortgage and if he could not raise it he would get his son Frank to raise it and pay me my money.    He would try and get a mortgage and if he could not, his son Frank would get it.    *    *    *

"A. I kept asking him and he said he was going to see Frank and Frank was going to see Mr. Nelson, that if any money was to be paid, Mr. Nelson would get it because Mr. Nelson is the man that saved his life when he was in the house of correction."

At this state of the proceeding the chancellor said he would not hear any more testimony for the reason he did not think a decree for permanent alimony could be satisfied in the way in which it was claimed it had been satisfied.    An order was entered adjudging plaintiff guilty of contempt of court, and granting the defendant a writ of *fieri facias*.    An appeal was taken from this order.

Counsel say:

"We conceive that there is one meritorious question of law.    If the husband is right, he should have the decree satisfied, or the $560 which the court found

she had received credited thereon. If the wife is right the husband should perform the duty imposed by the decree."

In considering this case it ought to be remembered that no appeal was taken from the original decree awarding alimony. It has never been satisfied in any way except by what was done by the plaintiff and defendant in living together for a short time under the circumstances disclosed. While it is urged by counsel for the plaintiff that the decree for alimony has been satisfied, we do not find any suggestion that the defendant has had her right of dower restored to her.

Section 11431, 3 Comp. Laws 1915, reads:

"When a decree of divorce from bed and board, forever, or for a limited time, shall have been pronounced, it may be revoked at any time thereafter, under such regulations and restrictions as the court may impose, upon the joint application of the parties, and their producing satisfactory evidence of their reconciliation."

We have not had our attention called to any statute or to any authority which will permit an original decree such as was entered in this case to be satisfied by what was done here.

The order of the court below is affirmed, with costs to Mrs. Fijalkowski.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.